# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| (full name)      (Register No). ) <br> Darryl Colbert    514067 ) ) ) <br><br> Plaintiff(s). ) ) ) <br> v. ) ) ) ) ) <br><br> (Full name) ) <br> Corizon LLC ) ) | Case No. _____ <br><br><br> Defendants are sued in their (check one): <br> ✓ Individual Capacity <br> ✓ Official Capacity <br> ✓ Both |

Defendant(s).

## COMPLAINT UNDER THE CIVIL RIGHTS ACT OF 42 U.S.C. § 1983

I.    Place of present confinement of plaintiff(s): South Central Correctional Center 255 West Highway 32 Licking MO 65542

II.    Parties to this civil action:
Please give your commitment name and any another name(s) you have used while incarcerated.

A. Plaintiff Darryl Colbert      Register No. 514067
     Address _____

_____

B. Defendant Dr. Benjamin Gaddy, Dr. Ashok K. Chada, Renee Todaro Kathleen Barton, Marley Stopham Et. AL
     Is employed as _____

_____

For additional plaintiffs or defendants, provide above information in same format on a separate page.

1

III. Do your claims involve medical treatment?    Yes **X**    No _____

IV. Do you request a jury trial?    Yes **X**    No _____

V. Do you request money damages?    Yes **X**    No _____

    State the amount claimed?    $**7,200. /000** (actual/punitive)

VI. Are the wrongs alleged in your complaint continuing to occur?   Yes **X**   No ___

VII. Grievance procedures:

A. Does your institution have an administrative or grievance procedure?
     Yes **X**    No _____

B. Have the claims in this case been presented through an administrative or grievance procedure within the institution?    Yes **X**    No _____

C. If a grievance was filed, state the date your claims were presented, how they were presented, and the result of that procedure. (Attach a copy of the final result.)
All grievances filed are detailed in the Complaint, including the disposition of each. Defendants are in possession of all copies, which are expected to be received during discovery

D. If you have not filed a grievance, state the reasons.
n/a

VIII. Previous civil actions:

A. Have you begun other cases in state or federal courts dealing with the same facts involved in this case?    Yes _____   No **X**

B. Have you begun other cases in state or federal courts relating to the conditions of or treatment while incarcerated?    Yes **X**    No _____

C. If your answer is "Yes," to either of the above questions, provide the following information for each case.

(1) Style: <u>Medical Malpractice 19TE-CC00176 (Texas County)</u>
     Darryl Colbert v. Corizon LLC
     (Plaintiff)               (Defendant)

(2) Date filed: _____

2

(3) Court where filed: _Texas County Circuit Court_

(4) Case Number and citation: _19TE-CC00176_

(5) Basic claim made: _Medical MALPractice_

(6) Date of disposition: _Sept 2019_

(7) Disposition: _____

(Pending) (on appeal) (resolved)

(8) If resolved, state whether for: _Dismissed Without Prejudice_

(Plaintiff or Defendant)

For additional cases, provide the above information in the same format on a separate page.

IX.    Statement of claim:

A.    State here as briefly as possible the facts of your claim. Describe how each named defendant is involved. Include the names of other persons involved, dates and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

_See attached_

B.    State briefly your legal theory or cite appropriate authority:

_See attached_

3

X.    Relief: State briefly exactly what you want the court to do for you. Make no legal arguments.

_See attached_

XI.    Counsel:

A. If someone other than a lawyer is assisting you in preparing this case, state the person's name. _n/a_

B. Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action?      Yes __X__ No _____

If your answer is "Yes," state the names(s) and address(es) of each lawyer contacted.

_Tom Porto_

C. Have you previously had a lawyer representing you in a civil action in this court?      Yes __X__     No _____

If your answer is "Yes," state the name and address of the lawyer.

_Thomas Rottinghaus_

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed (signed) this ___12th___ day of ___March___ 20_20_

_Danny Colbert_

Signature(s) of Plaintiff(s)

4

SCANNED at SCCC and E-mailed
3-13-20 by ____. 18 pages
date        initials   No.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

DARRYL COLBERT,           )
                                      )

          Plaintiff,         )
                                        )

v.                             )  Case No. _____

                                        )

CORIZON, LLC, et al.,       )
                                        )

          Defendants.      )

### COMPLAINT PURSUANT TO 42 U.S.C. § 1983

COMES NOW Plaintiff, Darryl Colbert, pursuant to 42 U.S.C. § 1983, and submits his Complaint in this cause of action.

### I.    JURISDICTION AND VENUE

1.    This is a civil action authorized by 42 U.S.C. Sections 1983, 1985, 1986 and 1988 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States, and the Constitution of the State of Missouri. This Court has jurisdiction under 28 U.S.C. Sections 1331 and 1343(a)(3). This Court has jurisdiction over Plaintiff's state law tort claims under 28 U.S.C. Section 1367. Plaintiff seeks declaratory and injunctive relief, as well as actual, compensatory and punitive damages pursuant to 28 U.S.C. Sections 2201 and 2202.

2.    The United States District Court for the Western District of Missouri is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## II. PARTIES

### A. PLAINTIFF

3. Plaintiff, Darryl Colbert, is a prisoner of the State of Missouri in the custody of the Missouri Department of Corrections, ("MDOC"), confined to the South Central Correctional Center, ("SCCC"), located at 255 W. Highway 32, Licking, Missouri 65542-9069.

### B. DEFENDANTS

4. Defendant Corizon, LLC, is a healthcare provider contracted by the MDOC to provide medical care and treatment to the inmates confined to the MDOC. Its principle office is located at 12647 Olive, Creve Coure, Missouri 63141.

5. Defendant Benjamin Gaddy is a medical doctor, who at all times relevant to his involvement in this Complaint was employed by Corizon, LLC, and worked at the SCCC located at 255 W. Highway 32, Licking, Missouri 65542-9069.

6. Defendant Ashokkumar R. Chada is a Medical Director employed by Corizon, LLC, and at all times relevant to this Complaint worked at the SCCC located at 255 W. Highway 32, Licking, Missouri 65542-9069.

7. Defendant Kathy Barton is a Director of Nursing employed by Corizon, LLC, and at all times relevant to this Complaint worked at the SCCC located at 255 W. Highway 32, Licking, Missouri 65542-9069.

8. Defendant Rene Todaro is a Health Services Administrator employed by Corizon, LLC, and at all time relevant to this Complaint worked at the SCCC located at 255 W. Highway 32, Licking, Missouri 65542-9069.

9. Defendant J. Cofield is a Director of Operations, Constituent Services with the MDOC and has his principle office located at 2729 Plaza Drive, Jefferson City, Missouri 65109-1146.

10. Defendant Thomas Bredeman is a Regional Medical Director employed by Corizon, LLC, and has his principle office located at 3720 W. Truman Blvd., Jefferson City, Missouri 65109.

11. Defendant Troy Wade is employed as Functional Unit Manager at the SCCC located at 255 W. Highway 32, Licking, Missouri 65542-9069.

12. Defendant Marley Stephan is a medication nurse employed by Corizon, LLC, and at all time relevant to this Complaint worked at the SCCC located at 255 W. Highway 32, Licking, Missouri 65542-9069.

13. Defendant Michelle Buckner is the Warden at the SCCC located at 255 W. Highway 32, Licking, Missouri 65542-9069. At all times relevant to the facts and circumstances surrounding this Complaint Defendant Buckner held the position as Assistant Warden.

14. Defendant Missouri Department of Corrections is a government entity in the State of Missouri and has its principal offices located at 2729 Plaza Drive, Jefferson City, Missouri 65109-1146. It should be noted that the claims raised in this Complaint involve policies, procedures, customs and common practices that were set in place by the Division of Adult Institutions which is a part of the Missouri Department of Corrections.

15. Each Defendant is being sued individually and in his or her official capacity. At all times relevant and mentioned in this Complaint, each Defendant acted jointly and/or separately under color of state law.

## STATEMENT OF FACTS

16. In April 1995, Plaintiff was committed to the MDOC.

17. Since his commitment to the MDOC as stated in paragraph 16 of this Complaint, the MDOC has been responsible for Plaintiff's medical care and treatment.

18. The MDOC has contracted Defendant Corizon, LLC, to provide medical care and treatment to the inmates committed and confined to the MDOC at the various institutions across the State of Missouri.

19. On or about July 1, 2012, Plaintiff was transferred to the SCCC, where wardens Michael Bowersox and Jeff Norman have been responsible for Plaintiff's care and treatment since his confinement there.

20. Wardens Bowersox and Norman, acting as agents of the MDOC, were responsible for supervising the medical care and treatment being provided by Defendant Corizon, LLC, to Plaintiff while he was placed in their custody and care during all times relevant to this Complaint.

21. Since his commitment to the MDOC, Plaintiff has been treated for a variety of medical ailments, with problems associated with swelling in his left knee being one of his chief medical complaints.

22. On April 12, 2017, Plaintiff received treatment from Defendant Gaddy in the form of a cortisone injection to his left knee to alleviate the swelling that Plaintiff had been experiencing in that area.

23. Defendant Gaddy improperly administered the cortisone injection described in paragraph 22 of this Complaint, and failed to check Plaintiff's medical history prior to administering the injection.

24. The actions of Defendant Gaddy as stated in paragraph 23 of this Complaint failed to meet the required standards of professional competence and was therefore negligent and deliberately indifferent to Plaintiff's serious medical needs and/or treatment.

25. As a direct result of the actions of Defendant Gaddy as stated in paragraphs 23 and 24 of this Complaint, Plaintiff was told by the Defendants that he had suffered an allergic reaction to the cortisone injection, when in actuality, Plaintiff suffered and infection to the area where the cortisone was injected and administered improperly.

26. As a direct of the improperly administered cortisone injection and the subsequent resulting infection as described in paragraphs 22 through 24 of this Complaint, Plaintiff has suffered from and been diagnosed with a number of physical ailments, and for conditions for which he is still seeking treatment as of the time of the filing of this Complaint.

27. The symptoms and physical ailments and/or conditions described in paragraph 25 of this Complaint include, but are not limited to:

  (a) diagnosed with "deep vein thrombrosis";
  (b) contracted Reno disease;
  (c) contracted sepsis;
  (d) loss of vision, and permanent and/or impaired damage to eyesight;
  (e) iron anemic;
  (f) damage to immune system;
  (g) elevated blood pressure; and
  (h) continued inflammation and swelling in left knee.

28. Due to the improperly administered cortisone injection administered by Defendant Gaddy as described in paragraphs 22 through 26 of this Complaint, Plaintiff was hospitalized from April 13, 2017, through on or about April 15,2017, at the Texas County Hospital located in Houston, Missouri, where he received two blood transfusions and was treated for several other symptoms which included the symptoms identified in paragraph 27 of this Complaint.

29. Following Plaintiff's hospitalization as outlined in paragraph 27 of this Complaint, Plaintiff was returned to the SCCC medical unit, and placed under the supervisory medical care of Defendant Chada.

4

30.    Prior to being released from the Texas County Hospital, a medical professional there who had examined and treated Plaintiff recommended that Plaintiff's medical care providers at his institution conduct an MRI on Plaintiff, which would help identity any remaining areas of Plaintiff's body that were still infected.

31.    Defendant Chada refused to follow the recommended treatment, care and follow-up treatment suggested by other doctors and medical professionals who examined and treated Plaintiff during and following his hospitalization, which includes but is not limited to the recommendations as outlined in paragraph 29 of this Complaint.

32.    Defendant Chada's refusal to follow the recommendations of treatment, care and follow-up care as outlined in paragraphs 29 and 30 of this Complaint led to the development of complications in Plaintiff's condition, further injury, permanent damage to Plaintiff's body, and the unnecessary infliction of pain and suffering.

33.    The actions of Defendant Chada as described in paragraphs 29 through 32 of this Complaint, demonstrate that he failed to use such care as a reasonably prudent doctor or healthcare provider would use under the same or similarly situated circumstances in observing, diagnosing, monitoring, caring for and approving treatment or additional testing for Plaintiff, and thereby failed to meet the required standards of professional competence and was therefore negligent and deliberately indifferent to Plaintiff's serious medical needs and/or treatment.

34.    As a result of the complications that developed as outlined in paragraph 31 of this Complaint, Plaintiff had to be sent to a hospital in Jefferson City, Missouri to receive a needle guided CT to remove the remaining infection from the events as described in paragraphs 22 through 31 of this Complaint.

35.    Defendant Corizon, LLC, directly through its policies, procedures and/or common practices failed to use such care as a reasonably prudent health care provider would use under the same or similar circumstances in observing, diagnosing, monitoring, caring for and approving treatment or additional testing for Plaintiff and was thereby negligent in that among other things, Defendant Corizon, LLC's policies, procedures and/or common practices: allowed administrative decisions to contradict treatments prescribed by treating physicians; fostered an environment wherein an onsite treating physician's authority to override administrative decisions was non-existent or unclear; unnecessarily long delayed treatment and provision of medication by, among other things but not limited to, requiring administrative approval and failing to keep sufficient supplies on hand to meet patient needs; and emphasized cost-savings and corporate profits over the medical well being of patients.

5

36.     Defendant Corizon, LLC, by implementation and continued use of the policies, procedures and/or common practices as outlined in paragraph 35 of this Complaint, was deliberately indifferent and negligent to Plaintiff's serious medical needs, treatment and follow-up care, and these policies, procedures and/or common practices were motivated by the desire of Defendant Corizon, LLC, to emphasize cost-savings measures and corporate profits over the medical well being of patients.

37.     Defendant MDOC has maintained a policy, procedure and/or common practice or custom that has produced a culture of wide spread corruption resulting in the constitutional deprivations and mistreatment of inmates, staff and/or contracted workers. All MDOC employees, staff, officials and contracted workers are trained and encouraged to work with one another to actively engage in, participate, assist, help and promote these instances of constitutional deprivations and mistreatment of inmates, staff and/or contracted workers, and to actively or tacitly agree with other MDOC employees, staff, officials and contracted workers to ignore and/or cover up the illegal and improper actions committed by their co-workers, colleagues or other MDOC employees, staff, officials and contracted workers by blatantly ignoring or turning a blind eye to complaints made towards these constitutional deprivation, including but not limited to the filing of grievances by inmates. This culture of wide spread corruption employed by MDOC officials is further maintained by using a variety of tactics designed to intimidate, coerce, discourage or retaliate against any individual, employee, contracted worker or inmate who would report any and all instances of wrong doing committed by MDOC staff, employees or contracted workers.

38.     The actions of Defendant Chada as stated in paragraphs 29 through 37 of this Complaint were motivated by and done by an expressed or tacit intent to agree with other Defendants, MDOC employees and/or MDOC contracted employees to engage in, actively promote, assist in executing, encourage and/or attempt to aide or cover up the actions facilitated by the policies, procedures and/or common practices employed by Defendant Corizon, LLC, and the MDOC as described in paragraphs 35 through 37 of this Complaint, which allowed the negligent and deliberately indifferent actions of the Defendants to occur as described within this Complaint.

39.     The policies, procedures and/or common practices as described in paragraphs 16 through 37 of this Complaint were a direct and proximate cause of Plaintiff's injuries and the continued deprivation of adequate medical care as outlined throughout this entire Complaint.

40.     On or about September 5, 2017, Plaintiff filed a grievance seeking medical treatment to correct the improperly administered cortisone injection performed by Defendant Gaddy as described in paragraphs 22 and 23 of this Complaint, as well as redress of Defendant Gaddy's negligent actions.

41.     On or about October 18, 2017, Defendant Barton responded to the initial stage of the grievance process filed by Plaintiff as described in paragraph 40 of this Complaint.

42.     The response given by Defendant Barton as described in paragraph 41 of this Complaint failed to provide Plaintiff with the requested medical care or a recommendation for the requested medical care, and intentionally mischaracterized Plaintiff's condition so as to avoid any written acknowledgment of Defendant Gaddy's negligent conduct or Plaintiff's actual medical condition.

43.     Defendant Barton knew or should have known that her actions as described in paragraph 42 of this Complaint would mislead any party reviewing Plaintiff's Complaint and would aid in covering up or concealing the negligent conduct of Defendant Gaddy as described in paragraphs 22 through 23 of this Complaint and took those actions intentionally and/or with no regard to the injury it has and would continue to cause to Plaintiff.

44.     The actions of Defendant Barton as described in paragraphs 40 through 43 of this Complaint demonstrate that she failed to use such care as a reasonably competent director of nursing or healthcare provider would use under the same or similarly situated circumstances in observing, diagnosing, monitoring, caring for and approving and/or recommending treatment or additional testing for Plaintiff, and thereby failed to meet the required standards of professional competence, and was thereby negligent and deliberately indifferent to Plaintiff's serious medical needs.

45.     The actions of Defendant Barton as stated in paragraphs 40 through 44 of this Complaint were motivated by and done by an expressed or tacit intent to agree with the other Defendants, MDOC employees and/or MDOC contracted employees to engage in, actively promote, assist in executing, encourage and/or attempt to hide or cover up the actions facilitated by the policies, procedures and/or common practices employed by Defendants Corizon, LLC, and MDOC as described in paragraphs 35 through 37 of this Complaint which allowed the negligent and deliberately indifferent actions of the Defendants to occur as described within this Complaint.

46.     On or about November 3, 2017, Plaintiff filed grievance appealing the decision of the denial of relief from the initial grievance process as described in paragraphs 40 through 42 of this Complaint.

47.     On or about January 3, 3018, Defendants Todaro and Chada responded to the grievance filed by Plaintiff as described in paragraph 46 of this Complaint.

48. The response to Plaintiff's grievance given by Defendants Todaro and Chada as described in paragraph 47 of this Complaint failed to provide Plaintiff with the requested and necessary medical care or a recommendation for the requested and necessary medical care, and intentionally mischaracterized Plaintiff's complaint and condition so as to avoid any written acknowledgement of Defendant Gaddy's negligent conduct or Plaintiff's actual medical condition as described within this Complaint.

49. Defendants Todaro and Chada knew or should have kown that their actions as described in paragraph 48 of this Complaint would mislead any party reviewing Plaintiff's Complaint and would aid in covering up or concealing the negligent conduct of Defendant Gaddy as described in paragraphs 22 and 23 of this Complaint, and took these actions intentionally and/or with no regard to the injury it has and would continue to cause Plaintiff.

50. The actions of Defendants Todaro and Chada as described in paragraphs 46 through 49 of this Complaint demonstrate that they failed to use such care as a reasonably competent Health Services Administrator or Medical Director would use under the same or similarly situated circumstances in observing, diagnosing, monitoring, caring for and approving and/or recommending treatment or additional testing for Plaintiff , and thereby failed to meet the required standards of professional competence, and was thereby negligent and deliberately indifferent to Plaintiff's serious medical needs.

51. The actions of Defendants Todaro and Chada as stated in paragraphs 46 through 50 of this Complaint were motivated by and done by an expressed and/or tacit intent to agree with the other Defendants, MDOC employees and/or MDOC contracted employees to engage in, actively promote, assist in executing, encourage and/or attempt to hide or cover up the actions facilitated by the policies, procedures and/or common practices employed by Defendants Corizon, LLC, and MDOC as described in paragraphs 35 through 37 of this Complaint which allowed the negligent and deliberately indifferent actions of the Defendants to occur and go unchecked as described within this Complaint.

52. On or about January 10, 2018, Plaintiff filed a grievance appeal to the grievance stages described in paragraphs 40 through 51 of this Complaint.

53. On or about January 29, 2018, Defendant Cofield filed a response to Plaintiff's grievance appeal as identified in paragraph 52 of this Complaint.

54. On or about February 7, 2018, Defendant Lovelace reviewed the response to Plaintiff's grievance appeal as given by Defendant Cofield described in paragraph 53 of this Complaint.

8

55. The response to Plaintiff's grievance given by Defendant Cofield and reviewed/approved by Defendant Lovelace as described in paragraphs 52 through 54 of this Complaint failed to provide Plaintiff with the requested and necessary medical care or a recommendation for the requested and necessary medical care, and intentionally mischaracterized Plaintiff's complaint and condition so as to avoid any written acknowledgment of Defendant Gaddy's negligent conduct or Plaintiff's actual medical condition resulting from this negligent conduct as outlined within this Complaint.

56. Defendatns Cofield and Lovelace knew or should have known that their actions as described in paragraphs 52 through 55 of this Complaint would mislead any party reviewing Plaintiff's complaint and would aid in covering up or concealing the negligent conduct of Defendant Gaddy and all other herein named Defendants as outlined in this Complaint for failing to take corrective or preventive measures, and Defendants Cofield and Lovelace took these actions intentionally and/or with no regard to the injury it has and would continue to cause Plaintiff.

57. The actions of Defendants Cofield and Lovelace as descried in paragraphs 52 through 56 of this Complaint were motivated by and done by an expressed and/or tacit intent to agree with the other Defendants, MDOC employees and/or MDOC contracted employees to engage in, actively promote, assist in executing, encourage and/or attempt to hide or cover up the actions facilitated by the policies, procedures and/or common practices employed by Defendants Corizon, LLC, and MDOC as described in paragraphs 35 through 37 of this Complaint which allowed the negligent and deliberately indifferent actions of the Defendants to occur and go unchecked as described within this Complaint.

58. Following Plaintiff's hospitalization on April 13, 2017, as described in paragraph 28 of this Complaint, Plaintiff was issued a knee brace and a wheelchair to prevent causing any more damage or inflammation to his knee.

59. On January 27, 2018, Defendant Stephan took the knee brace issued to Plaintiff as described in paragraph 58 of this Complaint, from Plaintiff without proper justification and outside of the guidelines, authority and description of her job and position of employment.

60. The actions of Defendant Stephan as stated in paragraph 59 of this Complaint were not taken in the capacity of her professional duty as a medication nurse, but were taken with the expressed and/or tacit intent to retaliate against Plaintiff for filing grievances and complaints against SCCC medical staff, which also includes the herein named Defendants, and/or for the expressed and/or tacit intent to discourage Plaintiff from pursuing further or future redress of his grievances against the herein named Defendants or other MDOC employees or contracted employees.

9

61. Plaintiff made several attempts to have his knee brace returned to him, but was denied by Defendant Chada.

62. Defendant Chada ordered that the wheelchair issued to Plaintiff as described in paragraph 58 of this Complaint be taken away outside of the recommendations of other healthcare professionals that had examined and treated Plaintiff and recommended that he use the wheelchair.

63. The actions of Defendant Chada as stated in paragraph 62 of this Complaint were not taken in the capacity of his professional duty as a doctor or healthcare provider, but were taken with the expressed and/or tacit intent to retaliate against Plaintiff for filing grievances and complaints against SCCC medical staff, which also includes the herein named Defendants, and/or for the expressed and/or tacit intent to discourage Plaintiff from pursuing further or future redress of his grievance against the herein named Defendants.

64. As a result of the actions of Defendants Chada and Stephan as stated in paragraphs 58 through 63 of this Complaint, Plaintiff suffered further injury to his left knee as well as unnecessary pain and suffering.

65. On or about March 13, 2018, Plaintiff filed a grievance to have the actions of Defendants Chada and Stephan as stated in paragraphs 58 through 64 of this Complaint addressed.

66. On April 18, 2018, Defendant Barton responded to the initial stage of the grievance process filed by Plaintiff as described in paragraph 65 of this Complaint.

67. The response given by Defendant Barton as stated in paragraph 66 of this Complaint failed to provide Plaintiff with the requested and necessary medical care or a recommendation for the requested and necessary medical care, and intentionally mischaracterized Plaintiff's condition and falsified the facts so as to cover up or appear to justify the actions of Defendants Stephan and Chada complained of in the grievance as stated in paragraphs 58 through 64 of this Complaint.

68. Defendant Barton knew or should have known that her actions as stated in paragraph 67 of this Complaint would mislead any party reviewing Plaintiff's complaint and would aid in covering up or concealing the wanton, malicious and retaliatory actions of Defendants Chada and Stephan as stated in paragraphs 58 through 64 of this Complaint, and Defendant Barton committed the actions stated in paragraph 67 of this Complaint intentionally and/or with no regard to the injury it had caused and would continue to cause Plaintiff.

69. The actions of Defendant Barton as stated in paragraphs 66 through 68 of this Complaint were motivated by and done by an expressed and/or tacit intent to agree with the other Defendants, MDOC employees and/or MDOC contracted employees to engage in, actively promote, assist in executing, encourage and/or attempt to hide or cover up the actions facilitated by the policies, procedures and/or common practices employed by Defendants Corizon, LLC, and MDOC as described in paragraphs 35 through 37 of this Complaint which allowed the negligent and deliberately indifferent actions of the Defendants to occur and go unchecked as described within this Complaint.

70. On or about May 1, 2018, Plaintiff filed a grievance appealing the decision of the denial of relief from the initial grievance process as described in paragraphs 65 through 67 of this Complaint.

71. On or about June 7, 2018, Defendants Todaro and Chada responded to the grievance filed by Plaintiff as stated in paragraphs 65 through 67 of this Complaint.

72. The response to Plaintiff's grievance given by Defendants Todaro and Chada as described in paragraph 71 of this Complaint failed to provide Plaintiff with the requested and necessary medical care or a recommendation for the requested and necessary medical care, and intentionally mischaracterized Plaintiff's condition and falsified the facts so as to cover up or appear to justify the actions of Defendants Stephan and Chada complained of in the grievances as stated in paragraphs 58 through 67 of this Complaint.

73. Defendants Todaro and Chada knew or should have known that their actions as stated in paragraph 72 of this Complaint would mislead any party reviewing Plaintiff's complaint and would aid in covering up or concealing the wanton, malicious and retaliatory actions of Defendants Chada and Stephan as stated in paragraphs 58 through 64 of this Complaint, and Defendants Todaro and Chada committed the actions stated in paragraph 72 of this Complaint intentionally and/or with no regard to the injury it had caused and would continue to cause Plaintiff.

74. The actions of Defendants Todaro and Chada as stated in paragraphs 71 through 73 of this Complaint were motivated by and done by an expressed and/or tacit intent to agree with the other Defendants, MDOC employees and/or MDOC contracted employees to engage in, actively promote, assist in executing, encourage and/or attempt to hide or cover up the actions facilitated by the policies, procedures and/or common practices employed by Defendants Corizon, LLC, and MDOC as described in paragraphs 35 through 37 of this Complaint which allowed the negligent and deliberately indifferent actions of the Defendants to occur and go unchecked as described within this Complaint.

75. On or about June 29, 2018, Plaintiff filed a grievance appeal to the grievance stages stated in paragraphs 65 through 74 of this Complaint.

76. On or about July 25, 2018, Defendant Cofield filed a response to Plaintiff's grievance appeal as identified in paragraph 75 of this Complaint. This response was reviewed by Defendant Bredeman.

77. The response to Plaintiff's grievance given by Defendant Cofield and reviewed/approved by Defendant Bredeman as described in paragraph 76 of this Complaint failed to provide Plaintiff with the requested medical care or a recommendation for the requested care, and intentionally mischaracterized Plaintiff's complaint and condition and falsified the facts so as to cover up or appear to justify the actions of Defendants Stephan and Chada complained of in the grievances as stated in paragraphs 58 through 76 of this Complaint.

78. Defendants Cofield and Bredeman knew or should have known that their actions as stated in paragraph 77 of this Complaint would mislead any party reviewing Plaintiff's complaint and would aid in covering up or concealing the wanton, malicious and retaliatory actions of Defendants Chada and Stephan as stated in paragraphs 58 through 64 of this Complaint, and Defendants Todaro and Chada committed the actions stated in paragraph 72 of this Complaint intentionally and/or with no regard to the injury it had caused and would continue to cause Plaintiff.

79. On or about March 27,2018, Plaintiff filed a grievance to ascertain information to find out if he was allergic to cortisone.

80. Plaintiff's reason(s) for seeking information to find out if he was allergic to cortisone stems from the Defendants' statements to him that the injuries and/or treatment he had received during all times relevant to this Complaint were caused by an allergic reaction to the cortisone shot given to him on April 12, 2017, as described in paragraph 22 of this Complaint. Because Plaintiff had been placed under the false impression by Defendants that his medical injuries and treatment since April 12, 2017, was the result of an allergic reaction to the cortisone shot, and because Defendants were recommending to give Plaintiff another cortisone shot to treat the pain in his left knee, Plaintiff was fearful of experiencing another allergic reaction.

81. Defendant Barton responded to the initial stage of the grievance process to the grievance filed by Plaintiff as stated in paragraph 79 of this Complaint.

82. As the IRR respondent, Defendant Barton had a duty of due care to investigate Plaintiff's complaint and/or take corrective or preventive measures to resolve Plaintiff's request, but Defendant Barton failed to take such action.

12

83. The actions of Defendant Barton as described in paragraphs 79 through 81 of this Complaint in failing to address or resolve Plaintiff's IRR were motivated by Defendant Barton's desire to actively engage in the policies, procedures and/or common practices, as outlined in paragraphs 35 through 37 of this Complaint, with the other herein named Defendants in this Complaint to conceal the fact that Plaintiff's injuries and subsequent inadequate medical care and treatment was the direct and proximate cause of the negligent and deliberately indifferent actions of the herein named Defendants.

84. Plaintiff filed appeals of the denial of his IRR/grievance as described in paragraphs 79 through 83 of this Complaint, which were answered, responded to, and/or reviewed at various stages by Defendants Buckner, Todaro, Chada, Cofield and Bredeman.

85. The grievance responses provided by the Defendants as described in paragraph 84 of this Complaint failed to provide Plaintiff with the requested and necessary medical information or a recommendation that the requested medical information be obtained and provided to Plaintiff, and intentionally falsified the facts so as to cover up the negligent actions of Defendants Chada and Gaddy in failing to provide Plaintiff with such care as a reasonably prudent doctor or healthcare provider would use under the same or similarly situated circumstances in observing, diagnosing, monitoring, caring for and approving treatment or additional testing for Plaintiff, and thereby failed to meet the required standard of professional competence.

86. The Defendants identified in paragraph 84 of this Complaint knew or should have known that their actions as stated in paragraph 85 of this Complaint would mislead any party reviewing Plaintiff's complaint and would aid in covering up or concealing the negligent actions of Defendants Gaddy and Chada as stated in in this Complaint, and Defendants committed the actions stated in paragraphs 84 and 85 of this Complaint intentionally and/or with no regard to the injury it had caused and would continue to cause Plaintiff.

87. The actions of the Defendants identified in paragraph 84 of this Complaint, as stated in paragraphs 85 and 86 of this Complaint, were motivated by and done by an expressed or tacit intent to agree with one another, all other herein named Defendants, MDOC employees and/or other MDOC contracted employees to engage in, actively promote, assist in executing, encourage and/or attempt to hide or cover up the negligent actions of Defendants Gaddy and Chada as stated in this Complaint, which were further facilitated by the policies, procedures and/or common practices employed by Defendant Corizon, LLC, and the MDOC as described in paragraphs 35 through 37 of this Complaint.

88. Defendants failed to disclose to Plaintiff that he had contracted sepsis and Reno disease, two resulting medical injuries which were directly and/or proximately caused by the improperly administered cortisone injection performed by Defendant Gaddy on April 12, 2017.

89. Plaintiff did not learn of his having contracted sepsis or Reno disease until September of 2017, and that these conditions were a direct and/or proximate result of the negligent conduct of Defendant Gaddy in improperly administering the cortisone injection on April 12, 2017.

90. The Defendants not only failed to notify Plaintiff of his contracting sepsis and Reno disease, but did agree with one another and/or other MDOC employees of MDOC contracted employees to intentionally provide Plaintiff with false information about the negligent acts of Defendants Gaddy and Chada, as described in this Complaint, with the expressed or tacit intent to cover up or conceal these negligent and deliberately indifferent acts.

91. Defendants Gaddy and Chada knew the negligent and/or deliberately indifferent conduct as outlined in this Complaint caused Plaintiff's injuries and contributed to Plaintiff sustaining further injury, and unnecessary pain and suffering by failing to observe, diagnose, monitor, care for and approve treatment or additional testing for Plaintiff, and knowingly took actions to conceal their conduct from Plaintiff by failing to inform him of these negligent and/or deliberately indifferent acts, and by conspiring with the other herein named Defendants to falsify facts and documents to prevent the negligent and deliberately indifferent actions from being discovered by Plaintiff or any reviewing party.

92. Plaintiff did not discover that he had contracted sepsis, Reno disease and/or the other herein named injuries and medical conditions as outlined in this Complaint until September 2017. The herein named Defendants did actively falsify Plaintiff's medical records and the information contained in the documents related to the various responses to Plaintiff's grievances as outlined in this Complaint with the expressed intent to cover up and conceal the negligent, deliberately indifferent and retaliatory conduct taken against Plaintiff as stated herein.

93. In 1997, the United States Supreme Court held that deliberate indifference by prison officials to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain in violation of the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution. This constitutional right is made applicable to the state of Missouri through the provisions of the Fourteenth Amendment to the United States Constitution and established under Missouri law by the provisions of Article I, Sections 2, 10 and 21 of the Missouri Constitution. This constitutional right has not been overturned, restricted or diminished since its establishment, and has stood clearly established since no later than 1976.

14

94. Under Missouri law, a person who makes presents or uses any record, document or thing knowing it to be false with the purpose to mislead a public servant who is or may be engaged in any official proceeding or investigation has committed the crime of tampering with physical evidence.

95. No later than 2001, the United States Supreme court has held that prison officials who retaliate against prisoners for filing grievances or lawsuits violate the prisoner's protected constitutional rights of access to the courts, right to petition the government for redress of grievances and due process of law as guaranteed by the First and Fourteenth Amendments to the United States Constitution. These protected constitutional rights are made applicable to the state of Missouri through the provisions of the Fourteenth Amendment to the United States Constitution, and established under Missouri law by the provisions of Article I, Sections 2, 9 and 10 of the Missouri Constitution. These constitutional rights have not been overturned or diminished since they were established, and have stood clearly established since no later than 2001.

96. The constitutional rights secured under the United States Constitution and declared by the United States Supreme Court are made applicable to the states, (including the state of Missouri), pursuant to the provisions of the Fourteenth Amendment to the United States Constitution.

97. Missouri state court judges are bound to follow the supreme law of the land as declared by the Supreme court of the United States.

98. As a result of the actions of the Defendants as stated in paragraphs 16 through 97 of this Complaint, Plaintiff has suffered and continues to suffer physical pain and emotional pain.

## CLAIMS

99. Plaintiff re-alleges and incorporates herein by reference all paragraphs of this Complaint with respect to the named Defendants, and in particular paragraphs 16 through 98 of this section of this Complaint.

## COUNT I

100. The actions of Defendant Gaddy as stated in paragraphs 16 through 98 of this Complaint in improperly administering a cortisone injection and failing to inform Plaintiff that the improperly administered cortisone injection caused an infection that resulted in Plaintiff contracting sepsis, Reno disease, Ischemia of the retina, blood poisoning and damage to Plaintiff's vision and vital organs, constituted the tort action of medical negligence/malpractice involving fraudulent concealment pursuant to RSMo. § 538.00 et seq., and rose to the level of deliberate indifference and cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

15

## COUNT II

101.  The actions of Defendants Chada, MDOC and Corizon, LLC, as stated in paragraphs 16 through 98 of this Complaint in failing to provide Plaintiff with the recommended follow-up care and treatment of his knee, failing to provide Plaintiff with the recommended follow-up care and treatment of the infection and subsequent complications caused by the improperly administered cortisone injection performed by Defendant Gaddy, and in failing to inform Plaintiff that the improperly administered cortisone injection caused an infection that resulted in Plaintiff contracting sepsis, Reno disease, Ischemia of the retina, blood poisoning and damage to Plaintiff's vital organs, constitutes the tort act of medical negligence/malpractice involving fraudulent concealment pursuant to RSMo. § 538.000 et seq., as well as constituted deliberate indifference to Plaintiff's serious medical needs and cruel and unusual punishment in violation of Article I, Sections 2, 10 and 21 of the Missouri Constitution and the Eighth and Fourteenth Amendments to the United States Constitution, and contributed to and proximately caused the injuries and unnecessary suffering sustained by Plaintiff.

## COUNT III

102.  The actions of Defendants Corizon, LLC, MDOC, Chada, Barton, Todaro, Cofield and Lovelace as stated in paragraphs 16 through 98 of this Complaint in failing to take corrective or preventive measures to stop the constitutional violations and tort actions as outlined in Count II of this Complaint constituted deliberate indifference to Plaintiff's serious medical needs and cruel and unusual punishment in violation of Article I, Sections 2, 10 and 21 of the Missouri Constitution and the Eighth and Fourteenth Amendments to the United States Constitution, and contributed to and proximately caused the injuries and unnecessary suffering sustained by Plaintiff.

## COUNT IV

103.  The actions of Defendants Stephan as stated in paragraphs 16 through 98 of this Complaint in taking Plaintiff's knee brace without proper authorization or justification was done maliciously and sadistically, and constituted cruel and unusual punishment in violation of Article I, Sections 2, 10 and 21 of the Missouri Constitution and the Eighth and Fourteenth Amendments to the United States Constitution, as well as constitutes the tort medical malpractice in violation of RSMo. § 537.000 et seq. and RSMo. § 538.000 et seq.

## COUNT V

104. The actions of Defendant Chada as stated in paragraphs 16 through 98 of this Complaint in taking Plaintiff's wheelchair without justification and in opposition to professional recommended medical care and treatment of his knee, was done maliciously and sadistically, and constituted cruel and unusual punishment in violation of Article I, Sections 2, 10 and 21 of the Missouri Constitution and the Eighth and Fourteenth Amendments to the United States Constitution, as well as constitutes the tort medical malpractice in violation of RSMo. § 537.000 et seq. and RSMo. § 538.000 et seq.

## COUNT VI

105. The actions of Defendant Corizon, LLC, MDOC, Barton, Todaro, Chada, Cofield and Bredeman as stated in paragraphs 16 through 98 of this Complaint in failing to take corrective or preventive measures to stop the constitutional violations and tort actions as outlined in Counts IV and V of this Complaint constituted deliberate indifference to Plaintiff's serious medical needs and cruel and unusual punishment in violation of Article I, Sections 2, 10 and 21 of the Missouri Constitution and the Eighth and Fourteenth Amendments to the United States Constitution, and contributed to and proximately caused the injuries and unnecessary suffering sustained by Plaintiff.

## COUNT VII

106. The actions of Defendants Stephan and Chada as stated in paragraphs 16 through 98 of this Complaint in taking Plaintiff's knee brace and wheelchair in retaliation for Plaintiff filing grievances constitutes a deprivation of Plaintiff's rights to access to the courts, right to petition the government for a redress of grievances, and due process in violation the First and Fourteenth Amendments to the United States Constitution, and Article I, Sections 2, 9 and 21 of the Missouri Constitution.

## COUNT VIII

107. The actions of Defendants Corizon, LLC, MDOC, Chada, Barton, Todaro, Cofield, Bredeman, Wade and Buckner as stated in paragraphs 16 through 98 of this Complaint in failing to take preventive or corrective measures, and in falsifying Plaintiff's medical records to cover up or conceal the constitutional deprivations and tort actions as stated in Counts I through VII of this Complaint, was done with the expressed and/or tacit agreement to engage with one another and/or other MDOC employees with deliberate indifference to actively participate in a conspiracy which contributed to and/or was the proximate cause of or unnecessary continuation of the above described constitutional violations as outlined in Counts I through VII of this Complaint.

## RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Issue declaratory judgment stating that:

    1. The actions of the Defendants as outlined in Counts I through VIII of this Complaint, violated Plaintiff's rights as stated in each respective Count.

B. Issue an injunction ordering Defendants Corizon, LLC, to send Plaintiff to a specialist to address the problems in his knee, and another specialist to deal with his vision and other physical ailments associated with the injuries suffered as a result of the claims made within this Complaint.

C. Award compensatory damages in the following amounts:

    1. $2,000,000.00 jointly and severally against all Defendants for the physical and emotional injuries sustained as a result of the negligent acts and deprivations of continued care that followed.

    2. $100,000.00 jointly and severally against all Defendants for conspiring to deprive Plaintiff of his rights and allowing the negligent conduct to continue.

    3. $100,000.00 each against Defendants Stephan and Chada.

D. Award punitive damages in the following amounts:

    1. $5,00,000.00 each against Defendant Corizon, LLC, and MDOC;

    2. $50,000.00 each against Defendants Chada and Stephan;

    3. $50,000.00 each against all remaining Defendants.

E. Grant such other and further relief as it may appear Plaintiff is entitled.

Respectfully Submitted,

_____

Darryl Colbert
Plaintiff
Register No. 514067
South Central Correctional Center
255 W. Highway 32
Licking, Missouri 65542-9069

SABRINA NICOLE COHN
Notary Public - Notary Seal
State of Missouri
Commissioned for Texas County
My Commission Expires: January 24, 2023
Commission Number: 19588242

18